1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    PAMELA J. WILLIAMS,                        Case No. 14-cv-02924-MEJ
                    Plaintiff,
8                                               **ORDER RE: CROSS-MOTIONS FOR**
          v.                                    **SUMMARY JUDGMENT**
9
     NANCY A. BERRYHILL,                         Re: Dkt. Nos. 14, 17
10
                    Defendant.
11

12

13                                  **INTRODUCTION**

14          Plaintiff Pamela J. Williams ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

15   seeking judicial review of a final decision of Defendant Nancy A. Berryhill ("Defendant"), the

16   Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending

17   before the Court are the parties' cross-motions for summary judgment. Mot., Dkt. No. 14; Opp'n,

18   Dkt. No. 17. The matter was reassigned to the undersigned on March 6, 2017. Dkt. No. 20.

19   Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral

20   argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"),

21   and the relevant legal authority, the Court hereby **GRANTS** Plaintiff's motion and **DENIES**

22   Defendant's cross-motion for the reasons set forth below.

23                                  **BACKGROUND**

24          Between 1980 and December 2008, Plaintiff worked as a customer service representative

25   for a telecommunications company. AR 178. For 7.5 hours of her work-day, she sat at a desk; for

26   0.5 hours of her work-day, she walked. AR 179. Her work consisted of handling 100-125 callers

27   per day; she placed customer orders, created customer contracts, and handled billing issues. *Id*.

28   She alleges she became disabled as of January 2011; she was 49 years old. AR 15, 169.

1    **SOCIAL SECURITY ADMINISTRATION PROCEEDINGS**

2    In January 2011, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability

3    beginning on January 14, 2011. AR 169. After the Social Security Administration ("SSA")

4    denied Plaintiff's claim initially and on reconsideration, Plaintiff requested a hearing before an

5    Administrative Law Judge ("ALJ"). AR 102, 108, 113. ALJ Regina Sleater conducted an initial

6    hearing on August 12, 2012, but continued the hearing to allow Plaintiff to obtain representation.

7    *See* AR 27-44. During the January 17, 2013 supplemental hearing, Plaintiff testified in person and

8    was represented by counsel, Patrick Kelly; the ALJ also heard additional medical expert testimony

9    from Shakil Mohammed, M.D., and testimony from Vocational Expert ("VE") James Westman.

10   AR 45-93.

11   **A.    Plaintiff's Testimony**

12   A rheumatologist diagnosed Plaintiff with fibromyalgia in 2003. AR 58-59. Plaintiff saw

13   her rheumatologist, Dr. Claudia Kuzis, "off and on" from that time through November 2012; she

14   also saw Dr. Cheung for treatment. AR 59-61. Every six months, Plaintiff's symptoms would

15   flare up and she would take two to three weeks off from work to recuperate. AR 70-71. She did

16   not take medications for her fibromyalgia while she was working, but at the time of the January

17   17th hearing, she was taking Cymbalta and had discontinued taking Gabapentin. AR 69-70.

18   Plaintiff stopped working in 2009, after her employer closed the location where she had

19   worked and she chose to take an early retirement package. AR 57-58, 76. Since she stopped

20   working, her condition has progressively worsened: while she used to have a flare-up every six

21   months, since 2010 or 2011, she has been in constant pain. AR 76. She spends most of her day in

22   bed, as constant siting exacerbates her symptoms. AR 75, 77. Some days she will go to the

23   market to shop for light groceries; sometimes her husband will take her out to eat. AR 75.

24   Sometimes she makes breakfast for her husband. AR 75.

25   **B.    Vocational Expert's Testimony**

26   VE Westman testified Plaintiff's past relevant work was "quite straight forward," as she

27   had "a long continued work history for a telecommunication utility." AR 81. She worked as a

28

1    customer service representative, which the Dictionary of Occupational Titles ("DOT") defines as a

2    sedentary position, skilled, with a Skilled Vocational Preparation ("SVP") level of 5. AR 81. He

3    further testified that "based on the claimant's description" on page 3 of Exhibit 2E (Plaintiff's

4    Disability Report), Plaintiff performed the job consistent with the DOT. *Id.*

5         As is relevant here, the VE testified that a person of Plaintiff's age, education, and

6    vocational background who can stand and walk for six out of eight hours and sit for six out of

7    eight hours could perform Plaintiff's past work. AR 82. The same person who needed to change

8    positions for a minute every 15 minutes while seated, without needing to leave the workplace and

9    without "necessary have to be not working if there is something to do that could be done standing"

10   could also perform Plaintiff's past work. AR 83-84 (Plaintiff could still perform her past relevant

11   work under that hypothetical "as long as she could still stand up for that one minute time frame,

12   still communicate with the customer by having the telephone headset."). A person who could

13   stand and walk for four out of eight hours instead of the six hours posed in the first hypothetical

14   could still work as a customer service representative, even if she were off-task due to pain for less

15   than ten percent of the time, as long as her being off-task was interspersed throughout the day.

16   AR 84-85. If that person were off-task for ten percent or more of the time, however, there would

17   be "pretty substantial erosion" of that position. AR 85.

18        Plaintiff's counsel attempted to pose another hypothetical based on the Residual Function

19   Capacity ("RFC") questionnaire submitted by orthopedic consultative examiner Dr. Lara

20   Salamacha, M.D. AR 88, 272-74. He asked the VE whether an individual could work as a

21   customer service representative if she could "stand and walk for at least two hours in the morning

22   and two hours in the afternoon up to six hours total in an eight hour day in thirty minute intervals

23   with five minute rest between intervals," and "no restrictions on sitting with position changes

24   allowed for five to ten minutes per hour for comfort." AR 88-89. But the ALJ and Plaintiff's

25   counsel could not agree on what the orthopedist had meant by "five minute breaks." AR 88-89.

26   The ALJ assumed the individual would be sitting down but working, with the ability to shift

27   positions sitting five to ten minutes per hour for comfort; counsel assumed "rest" "would mean not

28                                                3

1    working." AR 89-92. The issue was not resolved: as the ALJ and counsel agreed, "[i]t is open to

2    question." AR 92. The VE testified that an individual who was off-task for five minutes at every

3    thirty minute interval, as Plaintiff interpreted "five minute rest breaks[,]" would have "too much

4    time off work." AR 91.

5    **C.    The ALJ's Findings**

6            The regulations promulgated by the Commissioner of Social Security provide for a five-

7    step sequential analysis to determine whether a Social Security claimant is disabled.[1] 20 C.F.R. §

8    404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or

9    negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer*

10    *v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential

11    inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r*

12    *Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the

13    Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v.*

14    *Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

15            The ALJ must first determine whether the claimant is performing "substantial gainful

16    activity," which would mandate that the claimant be found not disabled regardless of medical

17    condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ

18    determined that Plaintiff had not performed substantial gainful activity since January 14, 2011.[2]

19    AR 15.

20            At step two, the ALJ must determine, based on medical findings, whether the claimant has

21    a "severe" impairment or combination of impairments as defined by the Social Security Act. 20

22    C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20

23    C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe

24

25    [1] Disability is "the inability to engage in any substantial gainful activity" because of a medical
impairment which can result in death or "which has lasted or can be expected to last for a

26    continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

27    [2] Neither the ALJ nor the parties address Plaintiff's work-related activities, if any, between the
time she stopped working in 2009 and the alleged onset date.

28                                                       4

1    impairments: obesity, fibromyalgia, low back pain/sciatica, and mild carpal tunnel syndrome.  AR

2    15.  The ALJ found Plaintiff's depression was non-severe.  AR 15-17.

3          If the ALJ determines that the claimant has a severe impairment, the process proceeds to

4    the third step, where the ALJ must determine whether the claimant has an impairment or

5    combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt.

6    P, App. 1 (the "Listing of Impairments").  20 C.F.R. § 404.1520(a)(4)(iii).  If a claimant's

7    impairment either meets the listed criteria for the diagnosis or is medically equivalent to the

8    criteria of the diagnosis, she is conclusively presumed to be disabled, without considering age,

9    education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined that Plaintiff

10   did not have an impairment or combination of impairments that meets the listings.  AR 17.

11         Before proceeding to step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §

12   404.1520(e).  RFC refers to what an individual can do in a work setting, despite mental or physical

13   limitations caused by impairments or related symptoms.  20 C.F.R. § 404.1545(a)(1).  In assessing

14   an individual's RFC, the ALJ must consider all of the claimant's medically determinable

15   impairments, including the medically determinable impairments that are nonsevere.  20 C.F.R. §

16   404.1545(e).  Here, the ALJ determined that Plaintiff has the RFC to perform "light work" with

17   some limitations, including (as relevant to this Motion), standing and/or walking 6 hours in an 8-

18   hour workday, sitting for 6 hours in an 8-hour workday, and she "must change positions if sitting

19   every fifteen minutes for about one minute."  AR 17.

20         The fourth step of the evaluation process requires that the ALJ determine whether the

21   claimant's RFC is sufficient to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv);

22   404.1520(f).  Past relevant work is work performed within the past 15 years that was substantial

23   gainful activity, and that lasted long enough for the claimant to learn to do it.  20 C.F.R. §

24   404.1560(b)(1).  If the claimant has the RFC to do his past relevant work, the claimant is not

25   disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  Here, the VE indicated Plaintiff's past relevant work

26   was a customer service representative, which is identified as a sedentary, skilled occupation with a

27   SVP level of 5, both as generally performed pursuant to the DOT and as actually performed by

28                                                      5

1    Plaintiff. AR 21. Based on the testimony of the VE, the ALJ determined Plaintiff could perform

2    past relevant work as actually and generally performed, and thus was not disabled. AR 21.

3        Based on the ALJ's finding at step four, the ALJ did not proceed to the fifth step of the

4    analysis.

5    **D.    ALJ's Decision and Plaintiff's Appeal**

6        On April 12, 2013, the ALJ issued an unfavorable decision finding that Plaintiff was not

7    disabled. AR 10-26. Plaintiff submitted additional evidence to the Appeals Council and requested

8    review. This decision became final when the Appeals Council declined to review it on April 23,

9    2014. AR 1-8. Having exhausted all administrative remedies, Plaintiff commenced this action for

10   judicial review pursuant to 42 U.S.C. § 405(g). On December 10, 2014, Plaintiff filed the present

11   Motion for Summary Judgment. *See* Mot. On February 2, 2015, Defendant filed a Cross-Motion

12   for Summary Judgment. *See* Opp'n.

13                            **LEGAL STANDARD**

14       This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

15   U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by

16   substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*,

17   246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a

18   scintilla but less than a preponderance" of evidence that "a reasonable person might accept as

19   adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)

20   (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The

21   court must consider the administrative record as a whole, weighing the evidence that both supports

22   and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).

23   However, "where the evidence is susceptible to more than one rational interpretation," the court

24   must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

25   Determinations of credibility, resolution of conflicts in medical testimony, and all other

26   ambiguities are to be resolved by the ALJ. *Id.*

27       Additionally, the harmless error rule applies where substantial evidence otherwise supports

28                                6

1    the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not

2    reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d

3    1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56

4    (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party

5    attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409

6    (2009)).

7                                                      **DISCUSSION**

8            The parties only contest one issue, namely, whether two of the ALJ's findings at Step Four

9    of the sequential evaluation analysis were supported by substantial evidence: that Plaintiff could

10   perform the job of customer service representative as she had actually performed it; and that

11   Plaintiff could perform the job of a customer service representative as it was performed in the

12   general economy. *See* Mot.

13   **A.      As Actually Performed**

14          The ALJ found Plaintiff had the RFC to sit for 6 hours in an 8-hour day, and to stand

15   and/or walk for 6 hours in an 8-hour work day. Based on this RFC, the ALJ found Plaintiff could

16   perform the position of a customer service representative as she had previously performed it.

17   Plaintiff argues the second finding is not supported by Plaintiff's testimony or other substantial

18   evidence because there is no evidence Plaintiff sat for only 6 hours a day. Mot. at 5-7. On the

19   contrary, the evidence establishes Plaintiff sat for at least 7.5 hours a day. AR 179. Although

20   Defendant "does not concede" the ALJ erred, she fails to oppose the issue on the merits. *See*

21   Opp'n at 3. Instead, Defendant contends this argument is irrelevant because there is substantial

22   evidence supporting the ALJ's finding that Plaintiff could perform her customer service position

23   as it is generally performed in the national economy. *Id*.

24          The Court finds Plaintiff's argument is well-taken: there is no evidence in the record that

25   would allow the ALJ to find Plaintiff actually performed her customer service position while

26   seated for only 6 hours in an 8-hour day. The VE testified Plaintiff performed her position

27   "consistent with the DOT" based on Plaintiff's Disability Report. *See* AR 81 (citing AR 179). In

28                                                          7

United States District Court
Northern District of California

1    that Report, Plaintiff indicates she worked seated at a desk between 7.5 and 8 hours a day. AR

2    179. The ALJ accordingly erred in determining an individual who could sit for no more than 6

3    hours a day could perform the job of customer service representative as Plaintiff actually

4    performed the position.

5    **B.    As Generally Performed**

6    Plaintiff also argues the ALJ's finding that Plaintiff could perform her prior occupation as

7    a customer service representative as it is generally performed in the national economy was not

8    supported by substantial evidence.

9    1.    Consistency of VE's Testimony with DOT

10    Plaintiff argues the ALJ did not comply with SSR-004p[3] because she did not affirmatively

11    ask the VE whether his testimony was consistent with the DOT. Mot. at 8-9. When a VE

12    "provides evidence about the requirements of a job or occupation, the adjudicator has an

13    affirmative responsibility to ask about any possible conflict between that [VE] . . . evidence and

14    information provided in the [DOT]" and obtain a reasonable explanation for any apparent conflict.

15    SSR 00-4p. Here, the ALJ did not ask the VE about any possible conflict with the DOT. AR 81-

16    93. Defendant concedes the ALJ "perhaps . . . procedurally erred by not explicitly asking" the VE

17    whether his testimony was consistent with the DOT, but responds that any error was harmless,

18    because Plaintiff cannot identify any conflict between the DOT and the testimony. Opp'n at 3.

19    Plaintiff in fact does identify a conflict with the DOT. The VE testified the DOT classifies

20    customer representative positions as "sedentary." AR 80-81 ("Her job as performed fits nicely

21    within the DOT description of customer service representative.").[4] The SSA defines "sedentary"

22

23    [3] Social Security Regulations "represent precedent final opinions and orders and statements of
      policy and interpretations of the SSA. [They] reflect the official interpretation of the SSA and are
24    entitled to some deference as long as they are consistent with the Social Security Act and
      regulations. [They] do not carry the force of law, but they are binding on ALJs nonetheless."
25    *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations, internal
      quotation marks, and alterations omitted).

26
      [4] The VE also testified Plaintiff performed her work consistent with the DOT based on her
27    representation in her Disability Report that she sat between 7.5 and 8 hours in a regular workday.
      *See* AR 81, 179.

28                                                      8

work as that which requires a person to remain in a seated position uninterrupted for 2-hour intervals. Mot. at 9; *see also* Reply at 4 (citing SSR 96-9p & SSR 83-12). For example, SSR 96-9p explains in relevant part that

> Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. . . .
>
> \*        \*        \*
>
> **Sitting: In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.** If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded. The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to other work. See *Alternate sitting and standing* below.
>
> The fact that an individual cannot do the sitting required to perform the full range of sedentary work does not necessarily mean that he or she cannot perform other work at a higher exertional level. In unusual cases, some individuals will be able to stand and walk longer than they are able to sit. If an individual is able to stand and walk for approximately 6 hours in an 8-hour workday (and meets the other requirements for light work), there may be a significant number of light jobs in the national economy that he or she can do even if there are not a significant number of sedentary jobs.
>
> **Alternate sitting and standing: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand**. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

1996 WL 374185, at \*3, 6-7 (1996) (emphasis added).

9

1    SSR 83-12 also addresses sitting and sedentary work, and notes persons who must

2    alternate periods of sitting with standing or walking may not be capable of sedentary work:

3    In some disability claims, the medical facts lead to an assessment of
     RFC which is compatible with the performance of either sedentary
4    or light work except that the person must alternate periods of sitting
     and standing. **The individual may be able to sit for a time, but**
5    **must then get up and stand or walk for awhile before returning**
     **to sitting. Such an individual is not functionally capable of doing**
6    **either the prolonged sitting contemplated in the definition of**
     **sedentary work (and for the relatively few light jobs which are**
7    **performed primarily in a seated position) or the prolonged**
     **standing or walking contemplated for most light work**. (Persons
8    who can adjust to any need to vary sitting and standing by doing so
     at breaks, lunch periods, etc., would still be able to perform a
9    defined range of work.)

10   There are some jobs in the national economy--typically professional
     and managerial ones--in which a person can sit or stand with a
11   degree of choice. If an individual had such a job and is still capable
     of performing it, or is capable of transferring work skills to such
12   jobs, he or she would not be found disabled. However, most jobs
     have ongoing work processes which demand that a worker be in a
13   certain place or posture for at least a certain length of time to
     accomplish a certain task. Unskilled types of jobs are particularly
14   structured so that a person cannot ordinarily sit or stand at will. In
     cases of unusual limitation of ability to sit or stand, a VS should be
15   consulted to clarify the implications for the occupational base.

16   1983 WL 31253, at *4 (emphasis added).

17   Plaintiff argues a conflict with the DOT exists because the ALJ found Plaintiff "must

18   change positions if sitting every fifteen minutes for about one minute"—a requirement that

19   conflicts with the SSA's definition of sedentary work. Mot. at 9; *see also* Reply at 4. Defendant

20   concedes the DOT does not define what "changing positions every fifteen minutes for about one

21   minute" means, but contends that "[c]hanging positions if sitting every fifteen minutes for about

22   one minute is, on its face, not inconsistent with how one can posture, sitting, when speaking to

23   others on the telephone. Common knowledge tells us that it is perfectly consistent with how one

24   can posture, sitting, when speaking to others on the telephone." Opp'n at 4.

25   First, Defendant's argument is unsupported by the record. In posing her second

26   hypothetical to the VE, the ALJ added the limitation that the individual needed to change positions

27   every 15 minutes after she noticed Plaintiff had to get up every fifteen minutes during the hearing.

28   10

1    AR 82 ("I've been noticing you have to get up every 15 minutes."). The ALJ specified the change

2    of positions means an individual "doesn't have to leave the work place, and doesn't necessarily

3    have to be not working *if there is something to do that could be done standing*." AR 83-84

4    (emphasis added). The VE repeated the hypothetical, clarifying that "[t]he—every 15 minutes—if

5    that one minute could still be rising with one having a headset on then the job could still remain. . .

6    . as long as she could still stand up for that one minute time frame." AR 84. While the ALJ does

7    not define what is meant by "changing positions" when listing Plaintiff's RFC in her written

8    decision, the Court cannot accept Defendant's post hoc rationalization that the ALJ decided to

9    redefine the phrase from the manner in which she had used it during the hearing. *See Bray*, 554

10    F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's

11    decision based on the reasoning and factual findings offered by the ALJ—not post hoc

12    rationalizations that attempt to intuit what the adjudicator may have been thinking").[5]

13        Second, the Court cannot find that the failure to identify or explain the conflict between the

14    DOT and the VE's testimony was harmless. The VE testified that customer service

15    representatives could stand one minute every fifteen minutes: "as long as she could still stand up

16    for that one minute time frame, still communicate with the customer by having the telephone

17    headset, which is, *I believe*, universal nowadays for these customer service reps." AR 84

18    (emphasis added). His testimony regarding the "universal use of headsets" and the option to sit or

19    stand at will for customer service representatives was brief and speculative; it neither

20    acknowledged nor addressed the conflict with the DOT's definition of a sedentary position.

21    "[D]istrict court cases from this district have held that a VE's testimony that a plaintiff who

22    needed a sit/stand option could perform a certain job, where the DOT description did not explicitly

23    provide for a sit/stand option, and the VE did not sufficiently explain the conflict, created

24    reversible error." *Edwards v. Astrue*, 2013 WL 1891764, at \*8 (N.D. Cal. May 6, 2013) (citing

25

26

27    [5] This is all the more so given that it would require this Court to find the ALJ did not meet her
duty under SSR 96-9p of being "specific as to the frequency of the individual's need to alternate
sitting and standing" in her RFC assessment.

28                                 11

1    cases).  In *Edwards*, the

2
3              [p]laintiff needed a sit/stand option, and although the VE testified
               that [p]laintiff could perform "light" jobs, the DOT descriptions for
4              those jobs do not discuss the ability to sit or stand at will.  This
               creates an apparent conflict between the VE's testimony and the
5              DOT.  The VE's testimony did not provide sufficient support for his
               conclusion so as to justify the conflict. . . .   He did not explicitly
6              state that he actually knew that the jobs provided a sit/stand option.
               Nor did he explain why he thought that half of the jobs did provide a
7              sit/stand option, or explain what data or evidence his opinion was
               based on.   By using the word "think," the VE implied that his
8              opinion regarding the sit/stand option was nothing more than
               guesswork or speculation.

9    *Id*. at *8.  VE Westman used the words "I believe" in the same manner the VE in *Edwards* used

10   "think," failed to explicitly state he knew that customer service representatives could perform their

11   job while standing for one out of every fifteen minutes, and failed to show he had data or evidence

12   to support this opinion.  The failure to reconcile the VE's testimony with the DOT was not

13   harmless.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (error for ALJ to offer

14   "her own speculative explanation to rebut the DOT's presumptive exertion requirement" and to

15   defer to VE's "brief and indefinite testimony" and VE's "personal knowledge and experience as

16   superseding the DOT to the extent that the light exertion label was related to any standing/walking

17   requirements"); *Lewis v. Colvin*, 2013 WL 5719538, at *1, *8-10 (W.D. Wash. Oct. 21, 2013)

18   (adopting report and recommendation to reverse and remand case for further proceedings where

19   (1) ALJ did not comply with duty to inquire about possible conflicts with DOT; (2) VE's

20   testimony that jobs were consistent with restriction to one hour of sitting, standing or walking

21   because clerical nature of jobs allowed for sit/stand option appeared to conflict with DOT

22   definition of such work requiring an ability to sit for 2-hour periods; (3) VE did not testify whether

23   jobs upon which ALJ relied were consistent with one-hour limitation ALJ imposed or DOT

24   definition requiring ability to sit for 2-hours; and (4) ALJ failed to acknowledge apparent conflict

25   and explain how she resolved it in decision, simply asserting the testimony was consistent with the

26   DOT).

27          The Court cannot find the ALJ's failure to reconcile the VE's testimony with the DOT was

28                                              12

1    harmless. Although the ALJ in her decision asserts the VE's testimony is consistent (AR 21), the

2    Court finds there is an apparent conflict between the requirement that Plaintiff needs to stand up

3    for one out of every fifteen minutes, and the DOT's requirement that persons engaged in sedentary

4    occupations need to sit uninterrupted for two hours at a time.

5                  2.        Time Spent Away from Workstation

6             Plaintiff also argues the ALJ erred because she did not ask the VE whether an individual

7    could work as a customer service representative if she were away from her workstation for 1.5

8    hours per day. Mot. at 10-13. Although Defendant does not respond to this argument (*see*

9    Opp'n), the Court finds no error here.

10            The VE testified a customer service representative could stand at her workstation one

11   minute every fifteen minutes (AR 84), which Plaintiff calculates to 32 minutes per 8-hour

12   workday. Because she can only sit a total of 6 hours, Plaintiff argues that "[f]or the remaining one

13   and a half hours of standing and/or walking[, the representative] is necessarily away from the

14   workstation." Mot. at 12. That argument is not supported by the VE's testimony or the ALJ's

15   decision. On the contrary, the VE testified he thought that headsets were "universal nowadays for

16   these customer service reps" and that Plaintiff could continue to perform her work and speak to

17   customers using such a headset while standing. AR 84. The transcript of the January 2013

18   hearing shows the ALJ discussed sitting postural limitations; standing one minute periods where

19   Plaintiff would continue to work; sitting; and being off-task for different periods of times (less

20   than ten percent of the time, or ten percent or more of the time). But the ALJ never posed a

21   hypothetical where Plaintiff would be "away from the workstation" for any length of time. *See*

22   AR 82-92. The ALJ does not assume anywhere in her decision that Plaintiff will be away from

23   her desk for 1.5 hours. *See* AR 17-21.

24                                        **CONCLUSION**

25            For these reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment,

26   **DENIES** Defendant's Cross-Motion for Summary Judgment, and **REVERSES** the ALJ's

27   decision. This case is **REMANDED** for further administrative proceedings in accordance with

28                                              13

this Order, including but not limited to the issue of whether an individual who must stand one minute out of every fifteen and who can only sit for six hours in a work day can perform the work of a customer service representative.

The Court will enter a separate judgment in accordance with Rule 54.

**IT IS SO ORDERED.**

Dated: April 19, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge